■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JAMES MESSIAH, Appellant.— Judgment, Supreme Court, New York County, rendered January 10, 1972, convicting the defendant on his plea of guilty to attempted assault in the first degree, and sentencing him to an indeterminate term of imprisonment not to exceed four years, affirmed. Appellant was indicted, among other things, for attempted murder, a class B felony, attempted assault in the first degree, a class D felony, and felonious possession of two loaded weapons, a class D felony. He pleaded guilty to attempted assault in the first degree and was sentenced as if his plea of guilty had been to a class E rather than a class D felony. It would seem, based on his background, that the appellant merits consideration by the Board of Parole, (Correction Law, § 212), although in any event he would have to serve at least one year (Penal Law, § 70.00,

subd. 3). However, in this case, the defendant had two guns, and the intended victim was spared only because of the mechanical failure of one of the guns. Mere ineptitude is not a criterion for probation. The determination was in the sound discretion of the sentencing Judge. Concur — McGivern, J. P., Kupferman, McNally and Tilzer, JJ.; Murphy, J., dissents in the following memorandum: I disagree and would modify the judgment appealed from by reducing the sentence imposed to probation. In voting for such modification I do not, of course, condone the defendant's act. He pleaded guilty to a Class D felony and was sentenced to an indeterminate term of imprisonment not to' exceed four years. It is now well established that many factors must be considered in reviewing the propriety of a sentence imposed. As this court stated in *People* v. *Silver* (10 A D 2d 274, 275-276): "Basically, the primary object of our penal philosophy must be the protection and security of our community. For reasons of simple safety, the habitual criminal with his anti-social orientation and the incorrigible thug who resorts to violence to achieve his criminal designs must be uprooted and separated from the community. As a consequence, not only is protection afforded society but, rightly or wrongly, the law assumes that prompt and substantial punishment in such cases will deter others similarly inclined. However, all offenders are not habitual criminals. Great care should therefore be exercised in imposing judgment for the very obvious reason that vast differences exist among individual offenders and their personal capacity for rehabilitation. The prime aim of socialized justice, and inherent in its administration in our criminal courts today, is a dispassionate and conscientious evaluation of the unique aspects of the convicted offender's total personality, his intelligence, his character structure, his demonstrated ability to conform, his capacity to accept our social disciplines and limits, and his over-all stability. Such an inventory of his assets and liabilities is indispensable to a judicial determination in selected cases of whether accidental or situational offenders with promising potential can be aided to readjust to a normal life in the community without the disruptive, and sometimes destructive, effects of imprisonment. In sum, a sentence must not only encompass the community's condemnation of the defendant's misconduct, but must also evaluate the possibilities of the rehabilitation of the defendant as a useful and responsible member of the community. The point need not be labored that it is, generally, the community's gain whenever a family can be kept together as an integrated and emotionally satisfying unit, with the head of the family meeting his responsibilities to it instead of unnecessarily marking time in jail." The defendant herein acknowledges that he acted improperly and that he used bad judgment, and contends that the altercation arose while he was trying to visit a friend and was denied admittance to another building in the housing complex where he lives. The record bears out the fact that he was struck on the head and later received treatment at Roosevelt Hospital. Defendant, whose parents separated when he was an infant, was raised by his mother (until she died when he was 11) and then by his maternal grandmother, under marginal economic circumstances. He attained the equivalent of an eighth grade education and left school at age 14 to help support his grandmother. Defendant is now 64 years of age, he has been married for over 33 years, and has been a resident of this city since 1948 and now resides in the co-operative apartment he owns. His only daughter, now married, completed two years of college and, like her mother, is employed as a hospital worker. According to the probation report, defendant has no record of prior involvement with the law, except for an unverified 30-day sentence served in New Orleans in connection with "a Lottery charge". Since April, 1948 defendant has been steadily employed by one company and various members of this concern have written letters to the

Probation Department attesting to his reputation for reliability, honesty, good character and even temperament. In the circumstances here presented, it would appear that defendant's single impulsive act was completely out of character; and I can perceive no useful purpose in sending him to prison. In light of defendant's background, his strong family ties and his exemplary work record, the interests of justice would be better served if he was placed under supervised probation. Accordingly, the judgment should be modified to the extent of reducing the sentence to a five-year period of supervised probation.